Duane BRECHEISEN,
Petitioner–Appellant,

v.

Eloy MONDRAGON, Warden; and,
Attorney General, State of New
Mexico, Respondents–Appellees.

No. 86–1247.

United States Court of Appeals,
Tenth Circuit.

Nov. 12, 1987.

Peter Schoenburg, Asst. Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

Dale S. Morritz, Asst. Atty. Gen. (Paul Bardacke, Atty. Gen., with her on brief), Santa Fe, N.M., for respondents-appellees.

Before MOORE, SETH, and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of New Mexico dismissing with prejudice defendant's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Brecheisen (the defendant) argues that his petition should be granted because his earlier conviction for misdemeanor battery bars a subsequent conviction for criminal sexual penetration (CSP) under the Double Jeopardy Clause of the Fifth Amendment. Defendant also challenges the CSP statute as unconstitutionally vague and overbroad and claims there was insufficient evidence for the jury to convict him of the CSP charge. We hold the CSP conviction did not deprive defendant of his constitutional protection from double jeopardy. In addition, we believe the CSP statute is not unconstitutionally vague and that defendant lacks standing to challenge it as overly broad. Finally, we hold the evidence was sufficient to allow the jury to find that defendant and his wife lived apart at the time of the attack, as required by the CSP statute. We therefore affirm the district court's dismissal with prejudice of defendant's petition for writ of habeas corpus.

### I.

On June 11, 1982, after a separation which lasted between one day and one week, defendant broke into the trailer he formerly shared with his wife and son. Ms. Brecheisen attempted to flee to her son's room, but defendant pulled her out of the room by her hair and began striking her. The victim managed to temporarily break free and ran outside. Defendant pursued her and dragged her back to the trailer. Once inside the trailer, defendant beat the victim about the head and back as he forcibly had sexual contact with her.

In January 1983, a jury convicted defendant of simple battery and disorderly conduct. The district judge declared a mistrial on the CSP charge because the jury failed to reach a verdict on that count. A second trial was held on the CSP charge six months later in which the state presented essentially the same evidence it introduced in the first trial. The jury found defendant guilty, and he was sentenced to nine years in custody with the last three years suspended.

Defendant appealed his conviction to the New Mexico Court of Appeals, raising the same four points he argues in this appeal. The court affirmed the conviction in *State v. Brecheisen*, 101 N.M. 38, 677 P.2d 1074 (Ct.App.1984), *cert. denied*, 101 N.M. 11, 677 P.2d 624 (1984). The New Mexico Supreme Court denied defendant's petition for writ of certiorari on March 1, 1984. Shortly thereafter, defendant instituted federal habeas corpus proceedings based on the same issues presented to the state courts on direct appeal. The district court adopted the magistrate's recommendation that the petition be dismissed. The defendant appeals this dismissal.

## II.

### A.

Defendant first contends that his retrial, conviction, and punishment on the CSP charge violates the Double Jeopardy Clause of the Fifth Amendment. The clause protects against multiple punishments for the same offense. In particular, a defendant cannot be convicted of an offense if he was previously convicted of a lesser included charge stemming from the same transaction. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Defendant argues that his conviction of misdemeanor battery in the first trial bars his subsequent conviction of CSP because battery is a lesser included offense of second degree CSP.[1]

Defendant ignores, however, the fact that he committed several acts of battery apart from the attack forming the basis of the CSP charge. Defendant first struck the victim in her son's bedroom and then dragged her into the hallway. When Ms. Brecheisen freed herself and ran to a neighbor's house, the defendant committed a second battery by violently grabbing her and dragging her back into the home. Only the third battery, which occurred in the bathroom, was simultaneous to the act of CSP.

A federal court in a habeas corpus proceeding should defer to a state court's interpretation of a state statute as to whether a number of acts constitute only one criminal offense or separate offenses for double jeopardy purposes. *Tarrant v. Ponte*, 751 F.2d 459 (1st Cir.1985). The New Mexico Court of Appeals has held that a battery occurring separately from an act of CSP is not a lesser offense of the CSP. In *State v. Archunde*, 91 N.M. 682, 579 P.2d 808 (Ct.App.1978), the defendant committed forcible rape after lying on top of the victim and threatening to kill her if she made any noise. The court held that the initial contact and threats constituted battery. Because this battery preceded sexual contact, the court further ruled that it did not merge with the activities constituting the CSP. *See also State v. Young*, 91 N.M. 647, 579 P.2d 179 (Ct.App.1978), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978), *cert. denied*, 489 U.S. 957, 99 S.Ct. 357, 58 L.Ed.2d 348 (1978) (convicting defendant of both aggravated burglary, which includes batteries committed after the unlawful entry, and for CSP does not constitute double jeopardy).

In accordance with this precedent, we hold that the evidence establishes that the defendant committed three separate and distinct offenses. Double jeopardy, therefore, does not preclude the first two batteries supporting the conviction for battery, even though the third battery satisfies elements of the CSP charge. For merger of two offenses to be warranted, one offense must necessarily involve the other. It must be impossible to commit the greater

---

1. Battery is defined in New Mexico as "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent, or angry manner." N.M.Stat. Ann. § 30–3–4 (1983). The jury instructions on simple battery in the first trial asked the jury to find that "the defendant hit, choked, threw down, pushed, dragged or otherwise struck or applied force to the victim" in a rude, insolent, or angry manner. In both trials the jury instructions on CSP causing personal injury, which is set forth in N.M.Stat.Ann. § 30–9–11(B) (1983), stated that the state must prove: "1. The defendant caused Stacy Brecheisen to engage in sexual intercourse, fellatio, or anal intercourse; 2. The defendant used physical force or physical violence; 3. The defendant's acts resulted in personal injury to Stacy Brecheisen; 4. Stacy Brecheisen was not the spouse of the defendant...."

crime without also committing the lesser offense. *E.g., State v. Jacobs,* 102 N.M. 801, 701 P.2d 400 (Ct.App.1985). According to this test, the third battery is a lesser included offense, since this battery provides an essential element of the CSP. The first two batteries, however, are distinct from the acts constituting the CSP. Even if the defendant had not committed the first two batteries, he still could have been convicted of the CSP charge. Furthermore, neither of the first two batteries involved causing the victim "to engage in sexual intercourse, fellatio, or anal intercourse," the major element of second degree CSP.

### B.

■ The defendant argues that the jury in the first trial most likely convicted him only for the battery committed simultaneously with the CSP. We disagree. The record of the first trial contains ample evidence suggesting that a jury could have convicted the defendant of battery in at least two instances entirely separate from the actions constituting the CSP. Because these two acts standing alone were enough to convict the defendant of battery, we presume the jury did not base its verdict in the first trial solely upon the third battery. Moreover, the jury in the first trial was unable to reach a verdict on the CSP charge but separately convicted defendant of simple battery. The jury's failure to convict defendant of the CSP charge, which included a thorough review of the acts constituting the third battery, indicates that the battery conviction was not based on a consideration of the third battery, but primarily a review of the other two batteries.[2]

### III.

Defendant also argues that he was denied due process because of his conviction under an unconstitutionally vague statute. The CSP statute prohibits the "unlawful intentional causing of a person, other than one's spouse, to engage in sexual intercourse." N.M.Stat.Ann. § 30–9–11 (1983). Spouse is defined for purposes of this section as "a legal husband or wife, unless the couple is living apart or either husband or wife has filed for separate maintenance or divorce." N.M.Stat.Ann. § 30–9–10(E) (1983). Defendant claims that these statutes are unconstitutionally vague because they do not define "living apart" and therefore do not provide a fair warning of the proscribed conduct.

■ When a criminal statute is attacked on grounds of vagueness, it must be shown that the statute as written and construed would fail to alert the average person of the prohibited conduct. *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution. *E.g., Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Guided by this presumption, we hold that the plain language of the statute belies defendant's claim that the statute is unconstitutionally vague. Commentary published at the time of defendant's conviction and subsequent interpretations by New Mexico courts further support this position.[3]

---

**2.** Defendant cites a number of cases in which the Supreme Court held that when a case is submitted to the jury on alternate theories, the unconstitutionality of any of the theories requires setting aside the conviction. *E.g., Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). These cases are inapposite. Defendant was charged in the first trial with CSP, aggravated battery, and disorderly conduct. These charges were neither alternative theories for conviction nor unconstitutional. In addition, as we have stated, the jury's failure to reach a verdict on the CSP charge

suggests it did not decide the battery conviction based on the acts constituting the third battery.

**3.** Defendant also argues that the statute's vagueness will lead to arbitrary enforcement. As the Supreme Court noted in *United States v. Petrillo:* "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.... (T)he Constitution does not require impossible standards." 332 U.S. 1, 7, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877

A court should give statutory language its ordinary meaning when reviewing a claim that a criminal statute is unconstitutionally vague unless a contrary legislative intent is given. *E.g., State of Utah v. Kleppe*, 586 F.2d 756 (10th Cir.1978), *cert. granted, Andrus v. Utah*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979), *rev'd on other grounds*, 446 U.S. 500, 100 S.Ct. 1803, 64 L.Ed.2d 458 (1980). We believe the legislature used the phrase "living apart" to include a suspended marital relationship. The definition of spouse as a "legal husband or wife, *unless the couple is living apart* or either husband or wife has filed for separate maintenance or divorce" (emphasis added), suggests the statute was designed to prohibit nonconsensual sexual activity even among married persons during interruption of the relationship. There is no indication that the legislature intended either a durational requirement or the existence of measures to terminate the marriage to impose criminal liability on one spouse for the rape of the other.[4]

Defendant points out that only one interpretation of the statute existed at the time of his conviction, the Committee Commentary to U.J.I. Crim., 9.86 N.M.Stat.Ann. 1978. We believe this commentary gave defendant adequate notice that his conduct was illegal. It states: "Apparently the separation need not be on account of marital difficulty, the separation itself is sufficient to take the couple out of the spousal relationship." Under this interpretation, *any* separation constitutes "living apart" as used in the statute. No durational period or steps to formally terminate the relationship are required to find a suspension of the marital relationship.

Finally, it is well established that a state court's interpretation of a statute may provide standards which cure prior constitutional deficiencies. *Kolender v. Lawson*, 461 U.S. at 356, 103 S.Ct. at 1857; *Hoffman Estates v. Flipside*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). In ruling that the CSP statute is not unconstitutionally vague, the New Mexico Court of Appeals in the instant case provided helpful interpretive guidelines. The court held that an ordinary person would understand "living apart" in the statute to mean a suspension of the marital relationship. This suspension, according to the state court, does not only depend on the existence of separate residences; indeed, a suspension could be found if husband and wife no longer occupied the same bedroom, even if they shared the same residence. *Brecheisen*, 677 P.2d at 1078. The court further noted the similarity of "living apart" to the language in a state statute allowing spouses who have permanently separated and who "no longer live or cohabit together as husband and wife" to institute proceedings for the disposition of property, custody, and alimony without obtaining a dissolution of the marriage. *See* N.M.Stat.Ann. § 40-4-3 (1983). The court concluded that defendant and others in a similar position have notice of what conduct is prohibited within the plain meaning of the words "living apart."[5] *Brecheisen*, 677 P.2d at 1078.

(1947). For the same reasons that the statute gave defendant notice of the proscribed activity, the plain meaning of "living apart" in the CSP statute provides sufficient safeguards against arbitrary intrusions into individual's rights.

4. This statute recognizes the rights of spouses to greater independence and freedom during separation from their partners. In many jurisdictions, the marital rape exemption does not protect the husband from being convicted for raping his wife, even if no legal proceedings have been initiated. *E.g., State v. Smith*, 85 N.J. 193, 426 A.2d 38 (1981); *see also* Note, *The Marital Rape Exemption*, 52 N.Y.U.L.Rev. 306 (1977). Furthermore, the separation need not be for a significant period for the husband to be subjected to criminal liability. *E.g., State v. Rider*, 449

So.2d 903, (Fla.Dist.Ct.App.1984), *cert. denied*, 458 So.2d 273 (Fla.1984) (marriage carries with it no implied consent to sexual battery); *People v. Brown*, 632 P.2d 1025 (Colo.1981) (criminal sexual assault offenses apply to spouses living apart, with the intent to live apart, whether or not under a decree of judicial separation).

5. Defendant makes several flawed arguments regarding the appellate court's interpretation of "living apart." He argues that the court's interpretation expanded the definition of the phrase. This claim is without merit. The Committee Commentary, which was the only prior interpretation of the statute, stated that any separation, even if no marital difficulty existed, imposed criminal liability under the CSP statute. The state appellate court seemingly applied a more

We agree the defendant had notice that his behavior was prohibited by this statute. The testimony indicates that Ms. Brecheisen asked the defendant to move out of the trailer at least several days and perhaps a week before the incident. This separation was to last approximately a month to give her time to decide whether to seek a divorce. While defendant stated he did not consider himself to be living apart from his wife, he also admitted that he had no choice in the decision to move out. Defendant moved some of his belongings to a trailer he rented for a month's duration and visited his wife only to get his work clothes and his shaving kit. Based on these facts, the clear language of the statute, and the subsequent interpretations of its language, we conclude there existed a suspension of the marital relationship at the time of the attack and that defendant had notice his conduct was proscribed by the statute.

### IV.

■ Defendant also argues that the CSP statute is unconstitutionally overbroad because it infringes on privacy in marriage, which is a protected right of association under the First Amendment. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). We hold that defendant lacks standing to raise this argument. As the Supreme Court noted in *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), "(e)mbedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." The evidence indicates that a suspension of the marital relationship existed at the time defendant attacked his wife. Defendant should not, therefore, be able to rely upon the right to privacy in marriage in challenging the CSP statute.[6]

The Court has allowed a narrow exception to traditional standing requirements when the First Amendment is challenged. In such a case, an individual may challenge a statute as being overly broad when it might cause a burdening of innocent associations, even if his own conduct is properly proscribed. *Broadrick v. Oklahoma*, 413 U.S. at 612, 93 S.Ct. at 2916; *Dombrowski*

restrictive definition of "living apart," which required a finding that the marital relationship was suspended, rather than a simple determination that husband and wife were physically separated.

Defendant also argues that his due process rights were violated when the appellate court upheld his conviction on the basis of a different definition of spouse than the trial court employed. A careful reading of the record shows, however, that the jury considered more than physical separation in convicting defendant for CSP. Throughout the trial, the state emphasized Ms. Brecheisen's equivocal feelings toward the marriage and her consideration of getting a divorce. Furthermore, in his final argument, the prosecuting attorney stated:

Living apart isn't just how long or where you're residing. It's also a matter of intentions.... The intention of Stacey Brecheisen is that they were living apart. She wanted him out of the house. She wanted to consider filing a divorce. She needed time to be by herself and not living with him. And what were the intentions of Duane Brecheisen? Was it going to be a one night stay at a motel? ... He rented the trailer for thirty days.... He also intended that this would be a separation, that they would be living apart.

Finally, the jury asked the judge during its deliberation whether the intent to live apart has the same weight as actually living apart. While the trial judge asked them to resolve the issue based on their observations of the defendant and his wife and the surrounding circumstances, the question does indicate that the jury considered factors other than physical separation in reaching a verdict.

6. While we decide this issue based on the defendant's lack of standing, we note in passing that although the Supreme Court in *Griswold* held that the state cannot interfere with the private sexual activities of spouses, it did not prohibit the state from regulating sexual abuse. In fact, the contrary was noted by Justice Goldberg in his concurring opinion in *Griswold*, who cited Justice Harlan's statement that "(i)t is one thing when the State exerts its power either to forbid extra-marital sexuality ... or to say who may marry, but it is quite another when, having acknowledged a marriage and the intimacies inherent in it, it undertakes to regulate by means of the criminal law the details of that intimacy." *Griswold v. Connecticut*, 381 U.S. at 499, 85 S.Ct. at 1689 (Goldberg, J., concurring), *citing Poe v. Ullman* 367 U.S. 497, 553, 81 S.Ct. 1752, 1782, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting).

*v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). When conduct rather than speech is involved, however, the function of overbreadth adjudication significantly attenuates. In this circumstance, according to the Court, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. at 615, 93 S.Ct. at 2918. Furthermore, overbreadth claims have been curtailed when invoked against otherwise valid criminal laws that attempt to maintain control over harmful behavior. *Id.; see also Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

In this case, the CSP statute imposes criminal liability when the marriage is suspended either by the couple living apart or by the taking of formal steps toward dissolution. This is not a substantial and real encroachment on an innocent association. The marital right of association is scrutinized only when the relationship is suspended and nonconsensual intercourse is alleged. When these events occur, the marriage is sufficiently beyond the realm of protected association to permit the scrutiny necessary to accomplish the purposes of the statute. We therefore hold that the defendant does not have standing to raise the overbreadth claim.

## V.

Finally, defendant claims that the evidence does not support the jury's finding that he and his wife were living apart at the time of the attack as required by the CSP statute. He argues the state attempted to prove suspension of the marriage only by showing that he and his wife shared separate dwellings. According to the defendant, other considerations should have been taken into account by the jury, including whether sexual relations were suspended and if he and his wife had separate financial arrangements.

In a habeas corpus proceeding challenging a state conviction, relief will only be granted if a court determines that no rational trier of fact could have found proof of guilt beyond a reasonable doubt from the evidence presented at trial. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We believe there was sufficient evidence presented for the jury to determine that the defendant and Ms. Brecheisen were living apart. We have already mentioned Ms. Brecheisen's desire to live apart from the defendant in order to decide whether to get a divorce. According to her testimony, she felt she was living apart from the defendant at the time of the attack. Other factors supporting the jury's findings include evidence showing that Ms. Brecheisen asked her husband to move out, the couple's physical separation for an indeterminate period before the attack, and the defendant's securing other housing and paying one month's rent. Based upon this evidence, a rational trier of fact could reasonably have found that the defendant and his wife lived apart at the time of the attack and therefore were not spouses for purposes of the CSP statute.

AFFIRMED.