The **CITY OF KANSAS CITY,
KANSAS, Plaintiff,**

v.

**AIH WASTE
MANAGEMENT/INCINERATION, INC.,
Defendant.**

No. 92–2501–JWL.
Adv. No. A92–1499.

United States District Court,
D. Kansas.

June 29, 1993.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, Overland Park, KS, Stephen P. Chinn, David R. Tripp, Stinson, Mag & Fizzell, Kansas City, MO, N. Cason Boudreau, Harold T. Walker, City of Kansas City, Kansas—Legal Dept., Kansas City, KS, for plaintiff.

Timothy P. Orrick, Reid F. Holbrook, Holbrook, Heaven & Fay, P.A., Kansas City, KS, for defendant.

David R. Tripp, Stinson, Mag & Fizzell, Kansas City, MO, N. Cason Boudreau, Harold T. Walker, City of Kansas City, Kansas—Legal Dept., Kansas City, KS, for counter-defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case is a declaratory judgment action, filed by the plaintiff City of Kansas City, Kansas (the "City"), requesting a determination by the court that a special use permit issued to defendant AIH Waste Management/Incineration, Inc. ("AIH") has expired pursuant to a city ordinance. The matter is currently before the court on AIH's motion for summary judgment (Doc. # 24). AIH's motion for summary judgment contends that the ordinance upon which the City relies is unconstitutionally vague, and therefore void. For the reasons set forth below, AIH's motion is denied.

### I. Factual Background

On May 31, 1990, the City Council of Kansas City, Kansas approved AIH's application for a special use permit to build a medical waste incinerator. On December 20, 1990, the City approved an ordinance adopting findings of fact and conclusions of law, as well as establishing conditions of the special use permit. Among the conditions set forth in the ordinance was a requirement that AIH meet or exceed all applicable federal, state and local guidelines for air and water quality, and that AIH secure all necessary air pollution permits.

In order to construct the proposed medical waste incineration facility, defendant is required by K.A.R. 28–19–14 to obtain a construction and operation permit from the Secretary of the Kansas Department of Health and Environment (the "KDHE"). Detailed and technical architectural, engineering and operational information and documentation must be submitted to KDHE as a part of the application and review process. AIH has expended considerable resources (including the expenditure of approximately $400,000) in seeking approval from KDHE of its permit application.

With a ruling on AIH's permit application imminent, the City initiated this action, seeking an order from this court declaring the special use permit invalid.[1] The City contends that AIH "has failed to make adequate progress toward initiating the use in two years in that no building permits or construction permits have been requested from or issued by the [City] and construction has not been initiated." The City therefore contends the special use permit should be declared invalid under Section 27–1256 of the City's Code of Ordinances. Section 27–1256 states:

> If a use granted [by] a special use permit is discontinued for a period of two (2) years, or inadequate progress toward initiating the use is made in two (2) years, the special use permit shall no longer be valid. Any use requiring a special use permit from that time on will require a new application and the procedure set out under section 27–1253.

In its summary judgment motion, AIH seeks summary judgment on the grounds that the subject ordinance is unconstitutionally vague. Specifically, AIH contends that the phrase "inadequate progress toward initiating the use" is so imprecise and so indefinite that it offends constitutional due process guarantees.

### II. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

---

**1.** The KDHE has suspended its final determination on AIH's permit application pending resolution of this action.

one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

■■■ The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

*III. Discussion*

■■■ Legislatures are ordinarily assumed to have acted constitutionally. *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). Before a court may find an ordinance unconstitutionally vague, a movant must show beyond all reasonable doubt that it violates the due process clause.

> When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislation went beyond the confines of the Constitution.

*Brecheisen v. Mondragon,* 833 F.2d 238, 241 (10th Cir.1987).

The most oft-cited case enunciating the standards for evaluating vagueness is *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The *Grayned* court stated:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Id.* at 108–09, 92 S.Ct. at 2298–99 (footnotes omitted).

Although *Grayned* is commonly cited by courts as providing the basic standards for dealing with vagueness claims, *Grayned* dealt specifically with an analysis of the constitutionality of anti-picketing and anti-noise ordinances. The vagueness analysis utilized in dealing with such orders differs from that used in cases involving economic regulation, which we have in the present case. The analysis to be applied in determining the constitutionality of economic regulations on vagueness grounds is discussed in *Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The *Hoffman* court stated:

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test

because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

*Id.* at 498–99, 102 S.Ct. at 1193.

■ There are two dominant grounds that other courts have relied on in finding economic regulations to be unconstitutionally vague. The first of these, and central to our present case, occurs when the ordinance or regulation is barren of standards.[2] The Seventh Circuit dealt with this situation in *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497 (7th Cir.1980). The zoning ordinance in that case required theaters to apply for a special use permit before showing any "adult" movie. The law did not contain either a standard for deciding whether to grant a permit or any specifications of whether an "X" rated or "R" rated film constituted an "adult" movie. *Id.* at 501–02. The Seventh Circuit held the zoning ordinance to be unconstitutionally vague because:

'... [N]o standard for conduct is specified at all.' Such a provision simply has *no* core. This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the due process clause.

*Id.* at 501 (citing *Smith v. Goguen*, 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974) (citations omitted) (emphasis in original).

In *ABN 51st Street Partners v. City of New York*, 724 F.Supp. 1142 (S.D.N.Y.1989), the court was called upon to determine the constitutionality of zoning regulations dealing with requirements for the granting of special permits for building renovations. The plaintiff argued that the requirements language of the regulation gave the Department of Housing, Preservation and Development ("HPD") a silent grant of absolute, unfettered power to reject a proposed agreement at its "whim and caprice." *Id.* at 1149. The court found the disputed regulation to be constitutional, stating:

To be void for vagueness, a zoning ordinance must be barren of standards, as in *Entertainment Concepts, Inc. III, supra.* Plaintiff may challenge HPD's application of the long list of criteria as arbitrary and capricious in a non-facial challenge; however, there is no merit to the contention that the Ordinance on its face invites HPD to decide arbitrarily and capriciously to deny such an agreement.

Defendant's cross-motion for summary judgment on the vagueness claims is granted because the portions of the Ordinance challenged by plaintiff neither grant HPD unlimited discretion nor neglect to afford plaintiff knowledge of the regulation.

*Id.* at 1150.

■ Applying the standards set forth in the above-cited cases, this court finds that the ordinance in the present case is constitutional. The ordinance does not give the City unlimited discretion to terminate a special use permit, nor does it on its face allow the City to decide arbitrarily or capriciously to terminate a special use permit. The ordinance allows for discontinuation of a special use permit *only* if "inadequate progress toward initiating the use is made in two (2) years." This means the City cannot discontinue a special use permit at its own whim or fancy, but may only do so if "inadequate

---

2. The second ground involves situations where a municipality gives vague or ambiguous directions to individuals charged with enforcing rules and regulations. *See Bass Plating Co. v. Town of Windsor*, 639 F.Supp. 873 (D.Conn. 1986). In these situations selective, ad hoc and arbitrary enforcement can occur due to the vague instructions given by a municipality to those entrusted to enforce the rules or regulations. The court finds these cases distinguishable from the present action. Unlike those cases, where a party is attempting merely to enforce a given rule or regulation based on vague or ambiguous directions, in the present action the City is required to make a quasi-judicial determination as to whether AIH has satisfied the requirements for retaining its special use permit.

progress" has been made toward initiating the use.

Defendant argues that the term "inadequate progress" is so imprecise and indefinite that it can mean anything the City wants it to mean, and can therefore be interpreted subjectively by the City with unlimited discretion. However, the court does not believe that to be the case. The City is not free to interpret the language in any manner it desires. Rather, the determination of an objective standard for defining "inadequate progress" must be made through the regular means of statutory analysis. It is unnecessary to reach that ultimate decision here, but the court expects to look to, among other things, the policy considerations behind a governmental entity providing for special use permits through an ordinance such as the city has in place here, the reasons why the particular permit was sought and granted, and the motivation for the City to have desired to include the two year expiration period provided for in the ordinance.[3] When properly informed by considering such factors, the court believes that it, as well as other persons of ordinary intelligence, can divine the contours of what this language means in this context and that due process will be satisfied along the way.

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's motion for summary judgment (Doc. # 24) is denied.

**IT IS SO ORDERED.**

---

3. The court anticipates that the parties will brief this issue at greater length, pursuing these suggested avenues as well as others of their own choosing, in connection with the final round of contemplated dispositive motions.