**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ERICK DOYLE  JORDAN,

      Petitioner-Appellant,

v.

ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO, DONALD
A. DORSEY,

      Respondents-Appellees.

No. 96-2037
(D.C. No. CIV-94-193-HB)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **Circuit Judge, BRISCOE**, **Circuit Judge,** and **MCWILLIAMS**,
**Senior Circuit Judge.**

Submitted on the Briefs[**]

      On February 23, 1994, Erick Doyle Jordan, an inmate of the Southern New Mexico

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

[**]This case was originally set for oral argument on January 17, 1997.  Prior thereto,
this panel, after examining the briefs and appellate record, determined that oral argument
would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a);
10th Cir. R. 34.1.9.  The cause therefore was ordered submitted without oral argument.

Correctional Facility in Las Cruces, New Mexico, filed a <u>pro se</u> petition under 28 U.S.C. § 2254 for writ of habeas corpus in the United States District Court for the District of New Mexico. In the petition, Jordan alleged that his convictions in the Third Judicial District Court, County of Dona Ana, State of New Mexico, violated his rights under the United States Constitution. By order of court, the federal public defender was appointed to represent Jordan.

On January 17, 1996, a United States Magistrate Judge filed proposed findings and recommended disposition in which he found no violation of Jordan's constitutional rights and recommended that the petition be denied and dismissed with prejudice. Jordan filed objections to the magistrate judge's proposed findings and recommended disposition. On February 1, 1996, a federal district judge adopted the magistrate judge's proposed findings and recommended disposition, denied Jordan's petition and dismissed the action with prejudice. A certificate of probable cause was issued by the district court on February 21, 1996. Jordan appeals the order and judgment thus entered.

By grand jury indictment returned on September 6, 1991, Jordan was charged in the state district court in Dona Ana County, New Mexico, as follows:

> <u>COUNT I</u>: **Criminal Sexual Penetration in the Second Degree** in that he unlawfully and intentionally caused Nicole McCutcheon to engage in sexual intercourse by the use of force or coercion while aided or abetted by one or more persons, (a second-degree felony), contrary to Section Nos. 30-9-11 (B)(3), N.M.S.A., 1978 Comp., as amended;
>
> <u>COUNT II</u>: **Accessory to Criminal Sexual Penetration in**

- 2 -

**the Second Degree** in that he aided and abetted Wayne Ramzy in intentionally causing Nicole McCutcheon to engage in sexual intercourse by the use of force or coercion, (a second-degree felony), contrary to Section Nos. 30-9-11(B) and 30-1-13, N.M.S.A., 1978 Comp., as amended; and

COUNT III: **False Imprisonment** in that he intentionally confined or restrained Nicole McCutcheon without her consent and with the knowledge he had no lawful authority to do so, (a fourth-degree felony), contrary to Section No. 30-4-3, N.M.S.A., 1978 Comp.

At the close of evidence, the state district judge granted Jordan's motion for judgment of acquittal on Count II. In so doing, the judge held that there was insufficient evidence to show that Wayne Ramzy was the second person involved in these assaults, and that Jordan therefore could not have aided and abetted Ramzy, as he was charged in Count II, though he conceivably aided and abetted somebody else.[1] The jury thereafter

---

[1] In this regard, on appeal the New Mexico Court of Appeals spoke as follows:

> Count II charged Defendant with aiding a specific person, Wayne Ramzy, in the commission of CSP [Criminal Sexual Penetration] under NMSA 1978, Section 30-1-13 (Repl. Pamp. 1984). The dismissal of this Count [II] meant only that there was no proof that Ramzy was the other man involved in the assault. It did not mean that there was no other person involved, or that Defendant was not aided by another person in forcing the victim to have sexual intercourse. The victim testified there were two attackers, and that each took turns holding her while the other raped her. This evidence is sufficient to support the jury's finding that Defendant [Jordan] was helped and encouraged by another person when he attacked the victim.

convicted Jordan on Counts I and III.

At a sentencing hearing held on May 19, 1992, the state district judge sentenced Jordan to nine years imprisonment enhanced by eight additional years pursuant to the state's habitual criminal act on Count I and sentenced him to eighteen months, also enhanced by eight years, on Count III. All sentences were ordered to be served concurrently, which meant that Jordan's total prison term was seventeen years, to be followed by two years of supervised parole. As indicated, the New Mexico Court of Appeals affirmed Jordan's convictions. Jordan's petition for certiorari review by the New Mexico Supreme Court was summarily denied. *State v. Jordan,* 867 P.2d 1183 (N.M. 1993). It was in this general setting that Jordan turned to the federal courts for relief.

Several matters argued by Jordan in the federal district court are not raised on appeal. Jordan, through counsel, raises two issues in this court: (1) Jordan's convictions are not supported by sufficient evidence as required by the Fifth Amendment, and (2) Jordan's sentences on Counts I and III violate the double jeopardy and due process clauses of the United States Constitution. We find no such constitutional error and therefore affirm.

Without going into unnecessary detail, Nicole McCutcheon, the alleged victim, testified at trial that Jordan, whom she had first met the previous day, after hitting her in the face when she refused to pull down her pants when ordered to do so by Jordan's friend, held down her arms and held her head between his knees while the other man,

later identified, perhaps mistakenly, as Wayne Ramzy, raped her. McCutcheon went on to testify that Jordan then said, "Trade me places, Crawford," and proceeded to rape her while the other person held her down. When the rapes were over, the men left the room and placed a mattress against the door. McCutcheon then got dressed, pushed the mattress out of the way and ran to a nearby police station.

At the station, McCutcheon advised the officers that she had just been raped by Jordan and a man named Crawford. In a photo array shown McCutcheon, she identified Jordan as one of her attackers. In another photo array, she identified the second person whom she said also attacked her, which was a picture of Wayne Ramzy. Jordan and Ramzy are Afro-Americans.

We note here, parenthetically, that at trial McCutcheon, on direct examination, testified she was "very sure" about both identifications at the time she made them, but on cross-examination she testified she was not sure about her identification of Ramzy. The police then put out a "Be On the Lookout" ("BOLO") for Jordan and Ramzy. Shortly thereafter Jordan was taken into custody. According to the police, Jordan was most cooperative, and denied raping McCutcheon, although he admitted seeing her on the evening in question.

Angela Gardner, M.D., examined McCutcheon and testified concerning the results of her examination, stating that she found various bruises on McCutcheon's person. The doctor also testified that the sperm she found in McCutcheon was immotile, which she

said was somewhat abnormal since healthy sperm usually remain motile for up to 72 hours.

Another witness for the prosection was Mark Salvo, a forensic serologist at the Department of Public Safety Crime Laboratory in Santa Fe, New Mexico. He had examined some of the evidence seized in the case, including clothing and blankets from the bed where the alleged assaults took place. Salvo also had examined vaginal smears from McCutcheon and penile swabbings from Jordan. Salvo testified that he found the presence of sperm cells on the vaginal swabs and the presence of semen on McCutcheon's underwear. Salvo next testified that the sperm cells found on the objects he tested were similar to those found in Jordan's penile swabs. Salvo was qualified and accepted as an expert witness, and, as such, testified, over objection, that the semen he tested was categorized in the subtype of two-minus, which, he said, is found in .2 percent of the black population. In this regard, Salvo testified that Jordan has a subtype of two-minus.

Jordan's initial position in this court is that his convictions should be reversed because there is insufficient evidence to support either. In this regard, his argument is that there is no evidence to corroborate McCutcheon's testimony, and that her own testimony is itself "inherently incredible." The testimony of Dr. Gardner and Mark Salvo is perhaps subject to interpretation, but, nevertheless, it could reasonably be argued that it tends to corroborate, at least in some respects, McCutcheon's testimony. Be that as it

may, we do not believe that Ms. McCutcheon's testimony is itself "inherently incredible." As stated, McCutcheon testified that Jordan was not a complete stranger, she having met him on the day previous to the assault. A reviewing court should be slow to find the testimony of any witness "inherently incredible," since such tends to invade the province of the jury. In this connection, in *Tapia v. Tansy,* 926 F.2d 1554, 1561 (10th Cir.) *cert. denied*, 502 U.S. 835 (1991), we spoke as follows:

> We presume that the jury's findings in evaluating the credibility of each witness are correct. We may disregard testimony on review only if we find that the witness is inherently incredible.
>
> Testimony, to be considered incredible, 'must be unbelievable on its face, i.e., testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.' Confused, self-contradicting testimony by a drug addict does not make the witness's testimony inherently incredible. Nor does the fact that there are several conflicting versions regarding the events of the evening of September 7 affect our determination of credibility as a matter of law. Such inconsistencies are matters within the province of the jury. (citations omitted.)

Our study of the record indicates that McCutcheon's testimony was not "inherently incredible," and that there was some corroborative evidence, to the end that there is sufficient evidence to support Jordan's convictions on Counts I and III. Hence, we find no constitutional error.

As a part of his "insufficiency of the evidence" argument, counsel asserts that the district court committed reversible error in instructing the jury, as to Counts I and III, that

the defendant could be found guilty of a crime even though he, himself, did not actually commit the crime if he, *inter alia*, "helped, encouraged or caused the crime to be committed." Under the facts of this case, we fail to see how the instruction was appropriate. However, in any event, possible error in this regard was, in our view, harmless and most certainly did not rise to the level of constitutional error.

In Count I, Jordan was charged with unlawfully engaging in sexual intercourse with Nicole McCutcheon by the use of force and coercion, while aided and abetted by one or more persons, and the jury was so instructed. Certainly, Jordan was charged in Count I as a principal, and not an aider and abettor. In Count III, Jordan was charged with intentionally confining or restraining Nicole McCutcheon without her consent and with the knowledge that he had no lawful authority to do so. Again, the jury was so instructed. Under Count III, Jordan also was clearly charged as a principal, and an instruction on aiding and abetting was inappropriate. However, in each instance, i.e., in Count I Jordan was charged with criminal sexual penetration of Nicole McCutcheon and in Count III he was charged with false imprisonment of Nicole McCutcheon, Jordan was charged as a principal, and just how he could be aiding and abetting himself is difficult for us to perceive. But, as said, any possible error was harmless and most certainly was not constitutional error.[2]

---

[2]Ramzy was not jointly indicted with Jordan. It would appear that he was a defendant in a separate proceeding, which was later dismissed on motion of the State of New Mexico.

Jordan's final argument is that his convictions for Counts I and III, and the separate sentences imposed for each, even though to be served concurrently, violate the double jeopardy clause of the Fifth Amendment. In our view, Counts I and III charged separate and different crimes and an essential element of each is not an essential element of the other. Count I charged Jordan with criminal sexual penetration by force. Count III charged Jordan with unlawfully confining or restraining McCutcheon. The latter count is obviously directed to Jordan's conduct where, after striking McCutcheon when she didn't pull down her pants, he held down McCutcheon's arms and held her head between his legs, thus confining and restraining her, while another person raped her. Thus, the "confining and restraining" preceeded in time Jordan's criminal sexual penetration of McCutcheon. In other words, Jordan's actions, though closely related in time, constituted more than one offense. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

In *Thomas v. Kerby,* 44 F.3d 884 (10th Cir. 1995), we held that, although we are not bound by state court rulings on ultimate constitutional questions, we should give deference to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes. *Thomas*, 44 F.3d at 887 (citing *Mansfield v. Champion,* 992 F.2d 1098, 1100 (10th Cir. 1993)).

In this connection, in *Brecheisen v. Mondragon,* 833 F.2d 238 (10th Cir. 1987), *cert. denied,* 485 U.S. 1011 (1988), we affirmed a district court's order dismissing a New

Mexico state prisoner's § 2254 habeas corpus petition and, in so doing, we held, *inter alia,* that the defendant could be convicted of both battery and criminal sexual penetration, where the battery preceded the criminal sexual penetration by only minutes, without violating the double jeopardy clause. *Brecheisen,* 833 F.2d at 240-241.

Further, in *State v. Corneau,* 781 P.2d 1159 (N.M. Ct. App. 1989), the New Mexico Court of Appeals held that a conviction for both criminal sexual penetration and false imprisonment did not violate the double jeopardy clause. In so doing, the court noted that there was evidence of "false imprisonment" occurring either "before or after the forcible intercourse." *Corneau,* 781 P.2d at 1164.

Judgment affirmed.

Entered for the Court,

ROBERT H. McWILLIAMS
Senior Circuit Judge