**Randy Wayne THOMAS, Petitioner–Appellant,**

v.

**Dareld KERBY; Attorney General of the State of New Mexico, Respondents–Appellees.**

No. 93–2323.

United States Court of Appeals, Tenth Circuit.

Jan. 4, 1995.

Roger A. Finzel, Asst. Federal Public Defender, for petitioner-appellant.

Tom Udall, Atty. Gen., Jennifer L. Stone, Asst. Atty. Gen., Santa Fe, NM, for respondents-appellees.

Before ANDERSON, SETH, and BARRETT, Circuit Judges.

SETH, Circuit Judge.

Petitioner Randy Wayne Thomas appeals from an order of the district court dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1] The petition raises three broad grounds for relief, all of which were exhausted in the state courts: (1) involuntary plea induced by unkept promise regarding sentence; (2) ineffective assistance of counsel in connection with plea, sentencing, and appeal; and (3) violation of double jeopardy rights. In dismissing the petition, the district court adopted the magistrate judge's twenty-page "Second Amended Proposed Findings and Recommended Disposition," issued after an evidentiary hearing on some of petitioner's claims. We review the district court's legal conclusions de novo and its factual findings for clear error, *Hill v. Reynolds*, 942 F.2d 1494, 1495 (10th Cir.1991), and affirm its judgment in all but one respect: we reverse in part the court's rejection of petitioner's double jeopardy claim and remand for further proceedings regarding the appropriate relief to be afforded.

Petitioner pled nolo contendere in New Mexico state court to two counts of forgery and two counts of knowingly issuing checks drawn on insufficient funds. The charging information states that on one day in November 1983, petitioner forged two checks from the Werner Rabbit Ears–Land & Cattle Co. (for $225 and $315) and deposited them into an account with the Routt County National Bank of Steamboat Springs. Later the same day, petitioner wrote checks for $103.44 and $76.56 on the account in exchange for goods from two different retail stores. Ultimately, the forged checks were dishonored, leaving insufficient funds in the account to cover the latter checks. Following his plea, petitioner was sentenced to four consecutive five-year terms, four years of each consisting of habitual offender enhancement, for a total of twenty years' incarceration (with some additional parole and suspended time). The bulk of petitioner's habeas allegations center on the disparity between this sentence and the seven years petitioner contends counsel had told him would be imposed.

The record[2] amply supports the district court's finding that there was, in fact, no plea agreement regarding sentencing and no representation regarding such an agreement made by petitioner's counsel. Counsel may have estimated, and petitioner may have expected, a sentence substantially less than the twenty years imposed. However, the district court properly held that such circumstances do not invalidate a plea or render it involuntary. *See, e.g., United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir.1990), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991); *Wellnitz v. Page*, 420 F.2d 935, 936–37 (10th Cir.1970).

We also agree with the district court's rejection of petitioner's numerous allegations of ineffective assistance of counsel. Many of these lose their footing, on either the performance or prejudice prongs of the controlling constitutional test, *see Hill v. Lockhart*, 474 U.S. 52, 57–59, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985), as a result of our affirmance of the finding that no sentencing promise or misrepresentation was ever made to induce petitioner's plea. Thus, petitioner's claims that counsel misinformed him about sentencing, failed to apprise the court of the agreed upon seven-year sentence, and did not object when the court imposed a sentence in excess of seven years, obviously cannot prevail. Moreover, although counsel may have been professionally deficient in not insisting on a written plea agreement (the state

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. We note that the tape recording of petitioner's plea hearing on July 26, 1984, has been lost. Several factors attenuate the significance of this otherwise troubling occurrence, however. First, the tape was part of the district court record when the petition was resolved below (and the surviving tape log contains nothing to contradict the magistrate judge's summary of the hearing). Second, the parties do not dispute what took place at the hearing; they contest the appropriate legal effect to attribute to those events. Finally, the public defender reviewed the tape while preparing petitioner's appellate brief. Under the circumstances, we do not deem the tape's loss a substantial impediment to petitioner's appeal or our review thereof.

did dismiss some worthless-check counts in return for petitioner's plea on the remainder), *see State v. Lucero*, 97 N.M. 346, 639 P.2d 1200, 1205–06 (App.1981), *cert. quashed*, 98 N.M. 51, 644 P.2d 1040 (1982), petitioner cannot show any prejudice from this omission, because a document containing no promises regarding sentence would simply have confirmed the qualified character of any estimates counsel may have suggested with respect to petitioner's probable sentence.

■ As for petitioner's claim that counsel did not respond to requests for assistance in filing an appeal, the district court considered the pertinent, conflicting evidence and found that petitioner had not made any such requests during the period allotted for appeal. Consequently, the court held no constitutional deficiency had been shown. *See generally Laycock v. New Mexico*, 880 F.2d 1184, 1187–88 (10th Cir.1989). Upon review of the evidentiary record, we cannot say the court's factual finding is clearly erroneous, nor do we discern any error in the legal conclusion drawn therefrom.

■ Petitioner also complains that counsel did not challenge the sufficiency of the evidence proffered by the state to establish the factual basis for his plea. We have considered the pertinent facts, including petitioner's own testimony strongly implying a pre-plea admission to counsel that he had committed the charged offenses—indeed, had done so out of "[p]ure greed." R.Vol. II at 43. We agree with the district court that, under the circumstances, petitioner failed to demonstrate counsel was unreasonable in electing not to spotlight the state's case during the plea proceedings.

■ Petitioner's last objection to counsel's performance concerns the quality of the short presentation made on behalf of the defense at sentencing. Once again, we agree with the district court that counsel's strategy—foregoing a character-evidence review for an admitted multiple/habitual felon in favor of a simple, straightforward explanation of the options for leniency still available under the applicable mandatory-sentencing scheme—reflects the exercise of professionally acceptable judgment.

Finally, petitioner contends the double jeopardy clause was violated by the imposition of a separate (enhanced) sentence for each of the two forgery and two worthless checks counts. In our view, the only colorable issue raised in this regard is whether the four counts must collapse into two, one for each type of offense. We see no problematic overlap between the forgery and worthless-check counts, nor do we consider improper the consecutive sentence enhancement imposed for each count based on petitioner's status as a habitual offender.

■ The double jeopardy clause prohibits both successive prosecutions for the same offense and multiple punishments for a single offense. *See United States v. Dixon*, — U.S. —, —, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). Multiple-punishment claims are controlled by the intent expressed in the criminal statute(s) violated, i.e., if the legislature provided for multiple offenses under the circumstances, there is no premise for a double jeopardy claim. *See United States v. Koonce*, 945 F.2d 1145, 1150 (10th Cir.1991), *cert. denied*, — U.S. —, —, 112 S.Ct. 1695, 1705, 118 L.Ed.2d 406 (1992); *see United States v. Hollis*, 971 F.2d 1441, 1450 (10th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). In this regard, although we are not bound by state court rulings on ultimate constitutional questions, we "should defer to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes," *Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir.1993); *see Steele v. Young*, 11 F.3d 1518, 1523 (10th Cir.1993) (looking to state law "to determine whether [petitioner] committed one or more than one offense for double jeopardy purposes"). Significantly, then, the New Mexico courts have established a principle relating to the delimitation of separate state criminal offenses that has a direct bearing here.

■ In a line of cases that stretches some eighty years, New Mexico has recognized and developed the "single-larceny doc-

trine," [3] under which a single taking at one time or place from several victims, or a series of takings from one victim, may be treated as a single crime. *See State v. Brooks*, 117 N.M. 751, 877 P.2d 557, 559–61 (1994). While this ordinarily raises a factual issue regarding criminal intent for the jury to decide under proper instructions at trial, the pertinent circumstances may be such that, as a matter of law, only one offense could be involved. *Id.* 877 P.2d at 560. Thus, for example, *Brooks* held that the jury should have been instructed on the single-larceny doctrine with respect to multiple counts involving funds embezzled from several sources over a seven-week period, and also that three of the counts, alleging embezzlement of different cash amounts from a single day's deposit, constituted a single offense as a matter of law. *Id.* 877 P.2d at 558, 561. Two earlier cases relied on by *Brooks* for the latter holding provide additional illustrations of the sort of circumstances that legally require prosecution as a single offense. *See State v. Boeglin*, 90 N.M. 93, 559 P.2d 1220, 1223 (App. 1977) ("a taking of two or more articles of property from the same owner at the same time and place shall be prosecuted as only one larceny"); *State v. Klasner*, 19 N.M. 474, 145 P. 679, 680 (1914) (holding that indictment alleging theft of nineteen cattle from various owners on same day and from one area legally charged only one offense). Thus, petitioner argues persuasively that the two checks forged and deposited on the same day gave rise to only one offense, and, rather less persuasively, that the worthless checks

written on the same account and on the same day but at different stores likewise should have constituted only one count.

At this juncture, we must incorporate an important federal principle into the analysis. In *United State v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the Supreme Court discussed the extent to which a voluntary guilty plea [4] precludes a subsequent collateral attack on double jeopardy grounds. "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Id.* at 570, 109 S.Ct. at 762. Thus, "a defendant who pleads guilty to two counts *with facial allegations of distinct offenses* concede[s] that he has committed two separate crimes," *id.* (emphasis added), and is consequently barred from later challenging his multiple conviction on double jeopardy grounds, *id.* 488 U.S. at 569, 571, 573, 109 S.Ct. at 762, 763, 764. The underscored phrase reflects an important qualification on the waiver rule announced in *Broce*, however. Specifically, if a double jeopardy violation is apparent on the face of the indictment and/or the record existing at the time the plea was entered, it is not waived. *Id.* at 575–76, 109 S.Ct. at 765–66; *United States v. Pollen*, 978 F.2d 78, 84 (3d Cir.1992) (collecting cases), *cert. denied,* —— U.S. ——, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993).

Application of this qualified waiver rule leads us to divergent conclusions regarding the viability of the two multiple-

---

3. While the origins of this doctrine are reflected in the nominal reference to larceny, its application is not limited to that particular offense. *See State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127, 129–30 (1984) (applying single-larceny doctrine to embezzlement charges, despite legal distinctions between larceny and embezzlement); *see also State v. Brooks*, 117 N.M. 751, 877 P.2d 557, 559 (1994) (same). Given the basic similarity between larceny/embezzlement and the taking of funds by transfer of a forged or worthless instrument, there is no reason to suppose the doctrine would not be applied in the present context. *See Pedroncelli*, 675 P.2d at 130 (noting that both larceny and embezzlement [like the passing of forged or worthless checks] "encompass the requirement that the taking or conversion occur contemporaneously with an intention to deprive the owner of the property"); *cf. State v. Brown*, 113 N.M. 631, 830 P.2d 183, 186 (App.) (suggest-

ing robbery might be treated differently, at least in multiple-victim cases, given unique element regarding use or threat of force against victim), *cert. denied,* 113 N.M. 636, 830 P.2d 553 (1992).

4. For purposes of the case in which it is entered, a nolo plea in New Mexico amounts to a confession of guilt, *State v. Baca*, 101 N.M. 415, 683 P.2d 970, 972 (App.1984); *State v. Apodaca*, 80 N.M. 155, 452 P.2d 489, 492 (App.1969), and has the same legal consequences as a guilty plea, *see State v. Ball*, 104 N.M. 176, 718 P.2d 686, 693 (1986). Accordingly, we treat petitioner's nolo plea as a guilty plea for purposes of the federal waiver principles discussed above. *See, e.g., United States v. Pickett*, 941 F.2d 411, 416 (6th Cir.1991); *Cook v. Lynaugh*, 821 F.2d 1072, 1075 (5th Cir.1987).

punishment claims raised here. First, we hold that the charging information and state record establish as a matter of law the unitary nature of the offense prosecuted as two separate forgery counts, compare *Brooks, Boeglin,* and *Klasner,* and, therefore, that the resultant double jeopardy violation warrants collateral relief. As to the worthless-check counts, however, the information and record do not conclusively demonstrate a single offense but, rather, raise at most a question of fact that might have been resolved in petitioner's favor if he had disputed the matter at a trial. Admittedly, the distinction drawn in *Broce* between (unwaived) double jeopardy claims established by the state record and (waived) ones requiring resort to extrinsic evidence is not exactly coterminous with the distinction drawn here between legally established multiple-punishment claims and ones raising factual issues unresolved due to the formal admission of guilt. Nevertheless, the analogy is a close one, and the underlying considerations of finality and respect for the plea process are fundamentally the same. We therefore deem it appropriate to invoke *Broce* and hold that petitioner's conviction for transferring worthless checks involved "counts with facial allegations of distinct offenses," and, consequently, that his plea to those counts constituted a binding concession "that he had committed two separate offenses." *Broce,* 488 U.S. at 570, 109 S.Ct. at 762–63.

We thus conclude that only petitioner's multiple forgery convictions violate double jeopardy protections, though we do not direct any particular, immediate action on the writ. Instead, we remand the action to permit the district court to designate the particular form of relief appropriate to implement our holding. The judgment of the United States District Court for the District of New Mexico is AFFIRMED in part, REVERSED in part, and the cause is remanded for further proceedings consistent with this opinion.