Filed 10/22/96

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

VICTOR ONTIVEROS,

          Petitioner-Appellant,

v.

DONALD A. DORSEY, Warden;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

          Respondents-Appellees.

No. 96-2036
(D.C. No. CIV-94-993-HB)
(D. N.M.)

---

ORDER AND JUDGMENT[*]

---

Before BRISCOE and MURPHY, Circuit Judges, and VAN BEBBER,[**] District
Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. Therefore, appellant's

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable G. Thomas Van Bebber, Chief Judge, United States District
Court for the District of Kansas, sitting by designation.

request for oral argument is denied, and the case is ordered submitted without oral argument.

Petitioner-appellant Victor Ontiveros appeals from the district court's order adopting the recommendation of the magistrate judge and denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner filed his notice of appeal on February 13, 1996, and the district court granted a certificate of probable cause to appeal on February 27, 1996.[1]

On appeal, petitioner claims (1) his convictions were not supported by sufficient evidence; (2) the trial court lacked subject matter jurisdiction over his criminal prosecution; and (3) his right to appeal was violated by the provision of an inadequate record which hampered his presentation of his claim of prosecutorial misconduct. "We review the district court's legal conclusions de novo and its factual findings for clear error." Thomas v. Kerby, 44 F.3d 884, 886 (10th Cir. 1995). We note petitioner does not appeal two additional issues that

---

[1] On April 24, 1996, while petitioner's appeal was pending, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, was enacted into law. AEDPA amended 28 U.S.C. § 2253 to require a "certificate of appealability" issued "only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). Because petitioner here filed his appeal and was granted a certificate of probable cause before the amendment of § 2253, the district court's grant of a certificate of probable cause under the version of § 2253 then in effect was proper. Nickel v. Hannigan, No. 94-3417, 1996 WL 560706, *9 n.4 (10th Cir. Sept. 30, 1996). Also during the pendency of this appeal, the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), amending the in forma pauperis statute, 28 U.S.C. § 1915, was enacted on April 26, 1996. Because petitioner's permission to proceed in forma pauperis was granted by the district court prior to PLRA's enactment date and was not revoked, we determine it unnecessary to decide whether the amendments to § 1915 apply here.

-2-

were also rejected by the district court: (1) whether petitioner had a valid entrapment defense; and (2) whether the trial court erred when it refused to strike three jurors for cause. As these issues are not appealed, any challenge by petitioner to the district court's rulings on these issues is waived. See United States v. Santistevan, 39 F.3d 250, 256 (10th Cir. 1994).

FACTS

The basic facts in this case are undisputed. In October 1991, petitioner and his codefendant, Nick Chavez, drove from Alamagordo, New Mexico, to El Paso, Texas, allegedly to purchase car parts. Prior to their departure, Jesus Carrillo, an undercover agent, had arranged to meet the pair in El Paso, where petitioner and Chavez had arranged for Carrillo to purchase cocaine from a third party. Carrillo paid petitioner and Chavez to transport the cocaine back to Alamagordo inside the spare tire in Chavez's van. Petitioner turned the cocaine over to Carrillo at a meeting at Chavez's house in Alamagordo. Several months later, petitioner and Chavez were arrested and charged with one count of trafficking cocaine by distribution, N.M Stat. Ann. § 30-31-20(A)(2), and one count of conspiracy to traffic cocaine by distribution, N.M. Stat. Ann. §§ 30-28-2 and 30-31-20 (A)(2). Following a jury trial, petitioner was convicted on both counts and sentenced to nine years' imprisonment on the first count and three years' imprisonment on the second count, to run consecutively. Both sentences were enhanced by one year under the New Mexico habitual offender provisions.

The New Mexico Court of Appeals affirmed petitioner's convictions on April 7, 1994. A petition for certiorari to the New Mexico Supreme Court was

summarily denied. Petitioner filed a state petition for habeas corpus relief which also was denied. Petitioner then filed the federal habeas corpus petition which is the subject of this appeal, raising the same issues he raised to the state court.

DISCUSSION

Insufficient Evidence:

Petitioner contends the state did not prove each element of the crimes for which he was convicted. In considering the sufficiency of the evidence supporting a state conviction, a federal court must consider the record and, "'after viewing the evidence in the light most favorable to the prosecution,'" ultimately decide whether no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Bowser v. Boggs, 20 F.3d 1060, 1064 (10th Cir.)(quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)(citation omitted)), cert. denied, 115 S. Ct. 313 (1994).

Petitioner argues there was insufficient evidence to prove he transferred cocaine to another, an element of trafficking cocaine by distribution. See section 30-31-20(A)(2). Petitioner asserts his participation in Carrillo's purchase of the cocaine was by way of introduction to the source only and did not constitute "'distribution, sale, barter, or giving away any controlled substance.'" Appellant's Br. at 14 (quoting section 30-31-20(A)(2)). In addition, he argues the cocaine was never his, and therefore, "it was logically impossible for him to sell, distribute, trade or do anything else with the cocaine." Id. at 15.

Under New Mexico law, "'traffic'" means "distribution, sale, barter or giving away of any controlled substance." N.M. Stat. Ann. § 30-31-20(A)(2).

-4-

The distribution of a controlled substance is defined as "to deliver other than by administering or dispensing," id. section 30-31-2(J), and "'deliver' means the actual, constructive or attempted transfer from one person to another of a controlled substance," id. section 30-31-2(G).

Here, petitioner admits he hid the cocaine inside the spare tire in Chavez's van, transported the cocaine back to New Mexico, and delivered the cocaine to Carrillo. As the state appellate court determined, this is sufficient evidence to support a conviction for trafficking under New Mexico law. See State v. Borja-Guzman, 912 P.2d 277, 281 (N.M. Ct. App.)("The various means of trafficking and the broad definition of deliver evinces a legislative intent to authorize prosecution and punishment for each separate transfer of a controlled substance."), cert. denied, 911 P.2d 883 (N.M. 1996).

Equally unavailing is petitioner's argument that he could not have trafficked cocaine because the cocaine did not belong to him. Ownership of the controlled substance is irrelevant. See State v. Hernandez, 720 P.2d 303, 311 (N.M. Ct. App.)(holding that lack of ownership of controlled substance cannot be used to show defendant could not be guilty of trafficking), cert. denied, 718 P.2d 1349 (N.M. 1986).

Next, petitioner claims the evidence supporting his conviction for conspiracy was insufficient. Petitioner argues Chavez knew nothing about the drug transaction and therefore, petitioner could not have conspired with Chavez to traffic cocaine. He further asserts that even if Chavez "did suspect something happening," if there was no specific agreement between them, "there was no

conspiracy." Appellant's Br. at 17.

In rejecting these arguments, the New Mexico Court of Appeals stated petitioner did not object to Carrillo's testimony that petitioner told him Chavez would be with him in El Paso, and that Chavez ordinarily helped him with this kind of transaction. R. Vol. I, doc. 9, ex. M at 7. Carrillo further testified that Chavez himself told him the El Paso source was reliable. Id. Moreover, it was not disputed that the van used to transport the cocaine belonged to Chavez, and he was involved in hiding the cocaine and transporting it to New Mexico. Id.

Federal habeas review of state court determinations is "'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Wright v. West, 505 U.S. 277, 296-97 (1992)). "Explicit and implicit findings by state trial and appellate courts 'shall be presumed to be correct,' 28 U.S.C. § 2254(d), unless one of the seven factors listed in section 2254(d) are present, or the federal court concluded that the state court findings are not fairly supported by the record." Case v. Mondragon, 887 F.2d 1388, 1392 (10th Cir. 1989)(quoting Rushen v. Spain, 464 U.S. 114, 120 (1983)), cert. denied, 494 U.S. 1035 (1990). "The presumption applies to basic, primary, or historical facts and the inferences that can properly be drawn regarding them." Id. at 1393.

Petitioner has not shown that his state convictions were obtained in

-6-

violation of federal constitutional law.[2]  See Jackson, 443 U.S. at 323.  Following our review of the state court record, we determine that the state appellate court's determination that there was sufficient evidence to sustain petitioner's conviction for conspiracy to traffic cocaine under New Mexico law, is entitled to a presumption of correctness.  See id. ("[a] judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is . . . entitled to deference by the federal courts").

Subject Matter Jurisdiction:

Next, petitioner contends the New Mexico state court did not have subject matter jurisdiction to prosecute him for the crimes with which he was charged. Petitioner asserts the actual transfer took place in Texas at the time Carrillo purchased the cocaine and any further exchange was "immaterial" to the charge of trafficking cocaine by distribution.  Appellant's Br. at 21-22.  He further asserts

---

[2]    Although petitioner appears to invoke two of the § 2254(d) exceptions to the presumption of correctness--the state court lacked subject matter jurisdiction to prosecute the crimes with which he was charged, § 2254(d)(4), and he "was otherwise denied due process of law in the State court proceeding," § 2254(d)(7), --because we ultimately determine these claims are without merit, they do not afford an avenue for challenge to the presumption of correctness afforded the state court's determinations.

We note that the AEDPA, enacted on April 24, 1996, limited and narrowed the exceptions to the presumption of correctness in 28 U.S.C. § 2254(d).  Because we have determined that petitioner could not be afforded relief under any of the previous exceptions, he obviously could not be afforded relief under the new, stricter version, and therefore we need not decide here whether the amended version of § 2254(d) should be applied retroactively.

-7-

there was no evidence indicating any agreement to traffic in drugs took place in New Mexico. Id. at 22.

As the state appellate court found, there was uncontroverted evidence that petitioner and Chavez hid the cocaine in the spare tire in Chavez's van, transported the cocaine to New Mexico, and delivered it to Carrillo. As the state court of appeals noted, "[t]o the extent that Defendant Ontiveros argues that the crime of trafficking cocaine should be limited to big drug dealers and not small drug couriers, . . . such considerations are for the legislature, not this Court." R. Vol. I, doc. 9, ex. M at 6. We agree.

As to petitioner's challenge to New Mexico's jurisdiction over the conspiracy charge, we have previously determined the state appellate court's findings that there was sufficient evidence to indicate petitioner and Chavez entered into a plan in New Mexico to travel to El Paso to obtain a drug connection for Carrillo are presumed correct. However, even if for purposes of this analysis we were to assume the conspiracy did not take root until they reached Texas, it continued until the pair returned to New Mexico and turned the cocaine over to Carrillo. See State v. Villalobos, 905 P.2d 732, 735 (N.M. Ct. App. 1995)(New Mexico supports concept that a conspiracy may continue for an extended time period across jurisdictional lines), cert. quashed as improvidently granted, 916 P.2d 1343 (N.M.1996). Therefore, it is clear that sufficient evidence supported both of petitioner's convictions, and New Mexico had subject matter jurisdiction over the criminal proceedings.

-8-

Incomplete Record and Prosecutorial Misconduct:

Petitioner asserts his ability to appeal his conviction was hampered by an inadequate trial record. He claims that he "was denied access to the unaltered tape-recordings of his trial for purposes of preparing this habeas corpus petition." Appellant's Br. at 25. He further asserts that a court order providing petitioner was to be provided with another copy of "tapes seven and eight of the trial," was never obeyed.[3] Id. at 26.

In a footnote, petitioner alleges "several tapes containing information material to [petitioner's] defense were altered, erased, or otherwise inaudible." Id. at 26 n.12. The state responds these are serious allegations without evidence, offer of proof, or even identification of the referenced tapes. Appellee's Br. at 12. The state points out the inconsistency between petitioner's allegations to this court on appeal and his pro se petition, in which he stated these few remarks by the prosecutor during closing arguments were the only "missing" portions of the taped transcript. We agree that petitioner has cited us to no other tapes which were allegedly altered, erased, or otherwise tampered with. Our review in this matter, therefore, was unaided by these allegations which misrepresent the evidence.

Specifically, petitioner claims the prosecutor made improper remarks during closing arguments, linking petitioner with "'Pablo Acosta'--a renowned drug dealer and stated Petitioner was part of a 'drug ring' out of Juarez, Mexico."

---

[3]     We note that in our record on appeal, we were provided with an original and a duplicate of tape seven of the trial proceedings.

Appellant's Br. at 27. Petitioner claims these remarks, not audible on the tape of closing arguments, are followed by a period of silence and a bench conference during which his counsel was objecting and moving for a mistrial. Id.

We review allegations of prosecutorial misconduct de novo. Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994). "In determining whether a petitioner is entitled to federal habeas relief for prosecutorial misconduct, it must be determined whether there was a violation of the criminal defendant's federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id.

We have listened to Tape 7, 8-25-92, allegedly containing the prosecutor's remarks. We agree there is a period of silence on the tape. In support of his contention that the alleged improper remarks of the prosecutor were erased, petitioner states that "[w]hen the recorder comes back on, it is during a bench conference, and defense counsel is objecting to prosecutorial misconduct and making a motion for a mistrial." Appellant's Br. at 27. This only is accurate as far as it goes, and again misrepresents the evidence. What is on the tape when it again becomes audible is a bench conference in which defense counsel is moving for a mistrial based on comments by the prosecutor calling petitioner's credibility into question. Defense counsel states, "What he just stated there, what Mr. Key just stated there was no different than standing there and calling my client a liar. That's prosecutorial misconduct and on that basis I move for a mistrial." Tape 7, 8-25-92 at tape counter 286-89.

This part of the exchange, although whispered, is audible and

-10-

understandable. It is, however, incompatible with petitioner's allegations of improper remarks regarding a relationship between petitioner and a Mexican drug connection. Therefore, in light of the lack of any evidence that the alleged remarks were ever made in the prosecutor's closing statement,[4] our review of the tape and the state court proceedings reveal no error of constitutional magnitude which rendered petitioner's trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986)(holding defendant must show the prosecutor's improper conduct rendered the trial fundamentally unfair and a denial of due process).

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[4] The state notes in its brief that Carrillo testified at petitioner's sentencing hearing that he had intelligence information linking petitioner with "Pablo Acosta, a known kingpin out of Presidio, Texas. Presidio, on the Mexican side of Presidio." Appellees' Br. at 15.