**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 5 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

JOHN CERRONE,

          Petitioner-Appellant,

v.

ARI ZAVARAS, as the Executive
Director of the Department of
Corrections of the State of Colorado;
ATTORNEY GENERAL FOR THE
STATE OF COLORADO,

          Respondents-Appellees.

No. 96-1219
(D.C. No. 95-S-2303)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]

_____

Before EBEL, HENRY, and MURPHY, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is

therefore ordered submitted without oral argument.

_____

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner appeals the district court's denial of habeas relief, 28 U.S.C. § 2254, from his Colorado convictions for pandering and for violating the Colorado Organized Crime Control Act. On appeal, petitioner argues that, in selecting the grand jury that indicted him, the state court judge impermissibly excluded 1) persons with Spanish surnames; and 2) wage earners.[1] Because petitioner failed to file a timely objection to the magistrate judge's recommendation to deny relief on his challenge to the exclusion of wage earners, however, he has waived appellate review of that issue. See, e.g., Talley v. Hesse, 91 F.3d 1411, 1412 (10th Cir. 1996). Although we recognize an exception to this firm waiver rule where the ends of justice require review, see id. at 1413, that is not the case here.

The single issue presented for resolution, therefore, is whether the state judge selected the indicting grand jury in a purposefully discriminatory manner by excluding all prospective jurors with Spanish surnames. If so, petitioner would be entitled to habeas relief. See Vasquez v. Hillery, 474 U.S. 254, 263-64 (1986) (holding discrimination in selection of grand jury is fundamental flaw undermining structural integrity of criminal tribunal itself and, therefore, is not subject to harmless error review).

---

[1] Petitioner, in the district court, dismissed an unexhausted § 2254 claim asserting a speedy trial violation.

We grant petitioner's motion for a certificate of appealability, see 28 U.S.C. § 2253(c), and affirm the denial of habeas relief. In doing so, we review the district court's legal determinations de novo. See Davis v. Executive Dir. of Dep't of Corrections, 100 F.3d 750, 756 (10th Cir. 1996), cert. denied, 1997 WL 120775 (1997). Absent procedural error in the state court, we must presume state court factual findings are correct if they are fairly supported by the record. See 28 U.S.C. § 2254;[2] see also, e.g., Purkett v. Elem, 514 U.S. 765, 115 S. Ct. 1769, 1771 (1995) (per curiam).

---

[2] The district court's order denying petitioner habeas relief is dated April 26, 1996, two days after the Antiterrorism and Effective Death Penalty Act (AEDPA) was signed into law. The AEDPA increases the deference federal habeas courts must afford state courts' factual findings and legal determinations. See Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997) (considering amended 28 U.S.C. § 2254(d) and (e)).

> While courts normally apply the law in force at the time of their decision, they will not use the new law if its application would have a retroactive effect. The Supreme Court has recently accepted certiorari on this issue. See Lindh v. Murphy, ___U.S.___, 117 S. Ct. 726 . . . (1997) (accepting certiorari on the question of whether § 107(c) of AEDPA fails to specify the extent to which § 2254(d) is to apply retroactively to pending habeas petitions, and, if so, whether the court correctly determined that the "habeas-curtailing statutes apply retroactively?" 65 U.S.L.W. 3483 (Jan. 14, 1997)). We need not await the Supreme Court's decision on these issues as [petitioner] cannot prevail under either version of the statute.

Houchin, 107 F.3d at 1470 (citation omitted).

The indicting grand jury was selected in the following manner, see People v. Cerrone, 854 P.2d 178, 181-83 & 182 n.5 (Colo. 1993): In response to a petition from the state attorney general, the chief judge for the Denver district court ordered impanelment of a state grand jury, see Colo. Rev. Stat. § 13-73-101 (subsequently amended in 1996), issuing summonses to 375 prospective grand jurors from a five-county area. Petitioner does not challenge the manner in which this original pool of prospective grand jurors was chosen.

Each of those summoned then completed a written questionnaire, which requested information concerning past and present employment, educational background, criminal records, prior participation in judicial proceedings, and any circumstances that might interfere with the prospective juror's service on the grand jury, as well as information concerning immediate family members, relatives and close friends. The chief judge, "with the advice of the attorney general," id., § 13-73-103, then selected the members of the grand jury, first by using the answers to the written questionnaires to excuse all but forty-two prospective jurors, then conducting oral voir dire of those remaining potential jurors. Of those excused on the basis of the written questionnaires, the chief judge excused fifty prospective jurors for unspecified reasons, despite the fact that those jurors had not indicated any reason on their questionnaires that might have prevented them from serving on the grand jury. At least five of those fifty

-4-

had Spanish surnames. Of the forty-two remaining prospective grand jurors summoned for oral voir dire, none had Spanish surnames and, consequently, the grand jury indicting defendant also did not have any members with Spanish surnames.

Petitioner alleges that the chief judge purposefully discriminated against the prospective grand jurors with Spanish surnames when he excluded them from grand jury service. See generally Castaneda v. Partida, 430 U.S. 482, 483-84, 490, 501 (1977) (affirming grant of habeas relief where state discriminated against Mexican-Americans in grand jury selection process). Following several pretrial hearings on petitioner's motion to quash the indictment, however, the state trial court found that the chief judge had not purposefully discriminated against individuals with Spanish surnames when he selected the grand jury. See Cerrone, 854 P.2d at 180-81. The Colorado Supreme Court affirmed that factual determination. See id. at 193-94. Because petitioner does not assert any procedural deficiencies, we must presume the correctness of the state trial court's factual finding that the chief judge did not purposefully discriminate when he excluded the prospective grand jurors with Spanish surnames, see Batson v. Kentucky, 476 U.S. 79, 98 n.21 (1986);[3] see also Hernandez v. New York, 500

_____

[3]     Although Batson addressed allegations that a prosecutor's discriminatory use of peremptory challenges, in selecting a petit jury, violated equal protection,
(continued...)

-5-

U.S. 352, 364, 366-67 (1991), so long as that finding is fairly supported by the record.

Petitioner bears the burden of proving purposeful discrimination in the selection of the indicting grand jury. See Batson, 476 U.S. at 93, 98. In making this determination, however, the court will apply a three-part burden-shifting analysis. See Hernandez, 500 U.S. at 358-59 (citing Batson, 476 U.S. at 96-98). The parties do not dispute that petitioner, in the state court proceeding, met his step-one burden of establishing a prima facie case of discrimination. See also id. at 359 (holding once State offers race-neutral explanation and trial court rules on ultimate question of intentional discrimination, preliminary issue of whether defendant made prima facie case becomes moot).

The burden of production then shifted to the State to come forward with a racially neutral explanation for the exclusion of the Spanish-surnamed jurors. See id. at 358-59 (citing Batson, 476 U.S. at 97-98); see also Purkett, 514 U.S. 765, 115 S. Ct. at 1770. Although the State "must give a 'clear and reasonably specific' explanation of . . . 'legitimate reasons'" for the exclusion of all prospective grand jurors with Spanish surnames, Batson, 476 U.S. at 98 n.20

---

³(...continued)
the Court noted that "[t]he basic principles prohibiting exclusion of persons from participation in jury service on account of their race 'are essentially the same for grand juries and for petit juries.'" 476 U.S. at 84 n.3 (quoting Alexander v. Louisiana, 405 U.S. 625, 626 n.3 (1972)).

(quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258 (1981)), this second step does not demand an explanation that is persuasive or even plausible, but only one that is race neutral, see Purkett, 514 U.S. 765, 115 S. Ct. at 1771. If the State met its burden at this second step, then petitioner would have had the burden of proving purposeful discrimination. See Hernandez, 500 U.S. at 359 (citing Batson, 476 U.S. at 98); see also Purkett, 514 U.S. 765, 115 S. Ct. at 1770-71.

The trial court determined that the State had met its burden of production by presenting the testimony of a deputy attorney general and an assistant attorney general, both of whom advised and assisted the Denver chief judge in selecting the grand jury that indicted petitioner, and two assistant attorneys general who had assisted the chief judge in selecting statewide grand juries in other years. See Cerrone, 854 P.2d 180-81.[4] Their testimony indicated that

> the chief judge . . . tried to select from the original random pool of 375 a venire of approximately 40 who were more highly educated, on

---

[4] On appeal, petitioner asserts that eighteen of the nineteen volumes of transcript included in the state court record have been lost. Nonetheless, petitioner does not indicate that this lack of record has affected his ability to present this claim for § 2254 relief and does not dispute, but rather relies, himself, on the evidentiary summaries in the state appellate courts' decisions. See Appellant's Opening Br. at 3 n.1; see also Thomas v. Kerby, 44 F.3d 884, 886 n.2 (10th Cir. 1995); Milone v. Camp, 22 F.3d 693, 697 n.2 (7th Cir. 1994). Under these circumstances, we do not deem the loss of the transcripts to be "a substantial impediment to petitioner's appeal or our review thereof." Thomas, 44 F.3d at 886 n.2.

the assumption that additional formal education would tend to help them understand the cases that would come before them. . . . [T]he chief judge also tried to select persons with jobs and family commitments that would most easily allow them without hardship to be away from work or home nearly every Friday for one year, operating on the assumption that persons who work for hourly wages are more likely to lose pay when serving on a state grand jury than are salaried employees, with the result that serving on a state grand jury is often more of a hardship for hourly wage earners. Finally, . . . the chief judge thought that the jury selection statutes could be interpreted as not permitting the consideration of more than 75 people from any one county, that as a result the chief judge routinely excluded from the venire persons who were summoned from addresses in one county but who had moved to a different county, and that this was the most likely explanation for the exclusion of two of the Spanish-surnamed individuals in question.

Id. at 190 (footnote omitted); see also id. at 192-93. Further, the deputy attorney general testified that the chief judge made an affirmative effort to select individuals from minority groups to serve on grand juries, had in other years selected grand jurors with Spanish surnames, and that the chief judge's exclusion of the particular Spanish-surnamed prospective grand jurors in petitioner's case was consistent with what the deputy attorney general would have advised, or did advise, the chief judge in this case, based upon the race-neutral criteria previously set forth. See id. at 192.

The deputy attorney general also indicated that it had been his experience that, although prospective jurors did not include on their questionnaire possible problems with service on the grand jury, when they appeared for voir dire, one-third to one-half of them changed their minds and did assert that they would

-8-

be unable to serve. See id. at 192. For that reason, "those who screen the questionnaires try to anticipate such occurrences and will recommend exclusion of a potential juror on the basis of a perceived possible hardship even if that person does not identify any specific hardship on the questionnaire." Id.

Citing Castaneda, 430 U.S. 482, petitioner argues that the State could not rebut his prima facie showing of discrimination without presenting the testimony of the decisionmaker ultimately responsible for selecting the grand jury, the Denver district court's chief judge. Castaneda, however, is distinguishable.

Under the Texas grand jury selection procedure at issue in Castaneda, jury commissioners, appointed by a state district judge, selected prospective grand jurors from the community at large, and then the state judge would test their qualifications to serve on a grand jury, based upon an inquiry dictated by state statute. See id. at 484-85. In response to the defendant's prima facie showing of discrimination, "the State introduced practically no evidence." Id. at 498. Although the State presented the testimony of the state court judge that appointed the jury commissioners regarding his selection of, and general instructions to, those commissioners, see id. at 490-91, 498, "[t]he jury commissioners themselves, who were the only ones in a position to explain the apparent substantial underrepresentation of Mexican-Americans and to provide information

on the actual operation of the selection process, were never called" to testify, id. at 491.

Unlike in Castaneda, the State in this case was able to assert a racially neutral explanation for the exclusion of all of the prospective grand jurors with Spanish surnames through the testimony of those actually involved in the selection process. Although the State did not present the testimony of the chief judge, who alone possessed the ultimate authority to select those members of the grand jury pool that would participate in voir dire and those who would eventually make up the grand jury, the State did present the testimony of the deputy and assistant attorneys general, who actively participated, assisted and advised the chief judge in making these selections. Those witnesses were able to testify to specific, race-neutral criteria used to excuse prospective jurors prior to oral voir dire. Further, the state trial judge had the opportunity to test those race-neutral reasons by comparing the questionnaires of those prospective grand jurors chosen for voir dire and those excluded based upon their written responses. See Cerrone, 854 P.2d at 192.

This testimony was sufficient to meet the State's burden of production and also fairly supported the state trial court's factual determination that the chief judge had not purposefully discriminated in selecting the grand jury that indicted petitioner. We must presume this finding to be correct. We, therefore, need not

consider the affidavit of the chief judge, submitted by the State to the federal district court as part of its objections to the magistrate judge's recommendation.

We AFFIRM the judgment of the United States District Court for the District of Colorado denying petitioner habeas relief.

Entered for the Court


David M. Ebel
Circuit Judge